## Svoboda et ux. v. City of Pittsburgh et al.

*Edward O. Spotts, Jr.*, for plaintiffs.
*Dickie, Robinson & McCamey*, for defendants.

ELLENBOGEN, J., September 28, 1938.—This case came before the court in banc on a motion for a new trial filed by plaintiff on the ground that the verdict of the jury was inadequate.

Alma Svoboda, plaintiff, was injured on February 14, 1934, at about 9 p.m., when she fell, because of a hole in the sidewalk, in front of 1015 Spring Garden Avenue, in the City of Pittsburgh, Allegheny County, Pa.

Plaintiff sustained a Potts fracture of the ankle, which is similar to a shattered ankle. She testified that, as she was lying or sitting on the sidewalk, immediately after falling, she examined her foot to determine the extent of her injuries and found that her foot could be moved until it extended at an angle of 180 degrees, similar to the position of the hand in relation to the arm. She was taken to the Presbyterian Hospital on the north side of Pittsburgh,

where she was treated by Dr. H. R. Decker. Two operations had to be performed on her because, after the first operation, her leg slipped out of its proper position. The leg was put into a cast up to the knee. After remaining in the hospital for one week she was taken home, where she was required to remain in bed for an additional eight weeks. At the end of the eight weeks half of the cast was taken off. She was unable to walk at that time and had to learn how to walk. She used crutches until the fall of that year, and later she used a cane, which she still does. She was not able to leave the house at all until late August or early September.

A shortening developed in plaintiff's leg which made it difficult for her to walk. She had to submit to a third operation which took place on March 16, 1936, about two years after the happening of the accident, and which was undertaken to lengthen her leg. She again remained in the hospital for one week, and after that at home in bed for about three weeks. A cast was again applied which was removed about five weeks after the operation. Again plaintiff had to learn how to walk.

Today, plaintiff's right leg is shorter than her left leg. She walks with a limp and has pain while walking. She needs the support of a cane. She has a tendency to lose her balance; her walk is unstable, and she has fallen several times. It is not safe for her to walk at night or in a dark place, unless someone accompanies her. There is a definite limitation of the toes and foot, and she suffers much from change in the weather. It appears that there may be a further shortening of her leg which would necessitate still another operation, the outcome of which would be uncertain.

It is not necessary to enter into any further discussion regarding the permanent disability sustained by plaintiff. It cannot be questioned that she has been permanently crippled for life and will never completely recover.

Before this accident, plaintiff conducted a beauty parlor from which she derived a certain income. She placed

her net income from the beauty parlor at $20 per week, but that testimony is strongly contested by defendant. It is clear from the testimony that she sustained some loss of earnings, but the exact amount of earnings from her business is difficult to ascertain because plaintiff kept no books.

This case was first tried in January 1937, when it resulted in a verdict of $500 for Alma Svoboda, the woman plaintiff, and a verdict in the sum of $500 in favor of Frank Svoboda, her husband.

The motion of plaintiff for a new trial, because of inadequacy of the verdict, came before the court in banc, consisting of Judges Reed, Moore, and Patterson. The verdict in favor of the husband was sustained, but a new trial was granted to the woman plaintiff because of the inadequacy of the verdict.

The case of the woman plaintiff was again tried and resulted in a $2,500 verdict on May 2, 1938, in favor of Alma Svoboda against the City of Pittsburgh, with liability over in favor of the City of Pittsburgh against the Peoples-Pittsburgh Trust Company. While the verdict is against the City of Pittsburgh, the city is not the real defendant. The Peoples-Pittsburgh Trust Company is financially responsible and, by reason of its primary liability, is the real defendant in the case.

It is clear to us that the verdict is inadequate and that the motion of plaintiff, seeking a new trial because of inadequacy of the verdict, is well taken. There are two courses open to the court: First, to grant a new trial. This would entail more delay in trying for a third time an accident that occurred on February 14, 1934. It would impose further expense upon the State, the county, and upon the parties. Or second, we can refuse the new trial, provided defendant is willing to file a stipulation which will assure a just recovery to plaintiff.

It is clear that the second course should be preferred, if we have the power to do so. It would terminate the case, and remove it from the crowded calendar of this court. It would save the State, the county, and the parties the expense of another, the third, trial. It would avoid further delay to the parties. At the same time it would assure that justice is done to plaintiff and to defendant in this case.

The question is therefore presented, whether the court has power to refuse the granting of a new trial because of inadequacy of the verdict, on condition that defendant file a stipulation to add a sum fixed by the court to the verdict, so as to increase the recovery of plaintiff to an amount deemed fair by the court.

As far as we have been able to ascertain, this question has never been passed upon in this State, and the power of the court to increase the recovery of plaintiff, with the consent of defendant, has never been exercised in this State. We will approach the decision of this question with caution and with due deliberation.

The power to take the reverse action from the one to be taken here, namely, the power to refuse a new trial to a defendant where the verdict is excessive, and where plaintiff agrees to remit a part of the verdict, has been exercised since time immemorial and can no longer be questioned. In 6 Standard Pennsylvania Practice 361, §113, it is stated that:

"In all cases where the damages, in the opinion of the court, are too large, an order may be made for a new trial, unless the plaintiff stipulates to remit a portion of the verdict."

In support of that statement, a large number of cases are cited in the footnote on pages 362 and 363. These citations could be increased many times by other Pennsylvania cases and by numerous cases in the other States. So often has this power been exercised, and for so long a time, it can no longer be called a question. The rule of

law is stated in 6 Standard Pennsylvania Practice 324, §82, as follows:

"Where the damages awarded by the jury appear to be excessive, the trial court may either grant a new trial absolutely, or give the plaintiff the option to remit the excess, or a portion thereof, and order the verdict to stand for the residue."

We can see no difference in principle between the power of the court to refuse a new trial in a case where plaintiff agrees to remit a part of the verdict, and a case where the court refuses a new trial, because defendant agrees to add to the verdict. In both cases the court refuses the granting of a new trial, because by stipulation of one of the parties the recovery of plaintiff is so changed as to afford him and defendant substantial justice. In the one case the final recovery of plaintiff is decreased, and in the other it is increased. In both instances the refusal of the new trial is based upon a condition which will assure a just, speedy, and economical termination of the cause of action. In 6 Standard Pennsylvania Practice 359, §112, it is said that "The trial court may impose terms on the parties as conditions of granting or refusing a new trial."

We have searched the books and we cannot find any sound or logical reasoning why the court should have the power to refuse a new trial in the one case and not have it in the other. It must be remembered that the granting, or the refusing to grant, a new trial rests within the sound discretion of the court, a discretion which is not subject to review by an appellate court, unless it is grossly abused: 6 Standard Pennsylvania Practice 367, §117, where it is said:

"The grant or refusal of a new trial is a matter within the sound discretion of the trial court. Unless the discretion is grossly abused, it cannot be assigned for error and reviewed"; and also at page 256, §16, where it is said:

"Except where the motion for a new trial is made upon the ground of an error in law occurring at the trial, an

application for a new trial is addressed to the sound legal discretion of the trial court and should be granted *only when the substantial rights of the petitioner have been so violated as to make it reasonably clear that a fair trial was not had.* The exercise of this discretion in the granting or refusing of a new trial is conclusive, unless abused, in which case it is subject to correction on review by an appellate court."

The verdict should not be set aside and a new trial ordered by the court, unless the conscience of the court is shocked and justice cannot be done between the parties except by submitting the cause to the determination of another jury. Where plaintiff, by stipulation, agrees to remit a part of the verdict so as to reduce his recovery to a sum which the court thinks fair to both parties, substantial justice is done and there is nothing to move the court to set aside the verdict and grant a new trial. The same applies to a case where the verdict is inadequate and defendant, by stipulation, agrees to add to the verdict so as to increase recovery of plaintiff to a sum which will do justice between the parties. Again substantial justice is done and the conscience of the court is not moved to set aside the verdict and grant a new trial.

It must be strongly emphasized that in neither case is the province of the jury invaded. In neither case is the verdict of the jury set aside. In both cases the court refuses to exercise its sound discretion to grant a new trial, because in the one case plaintiff is willing to decrease the amount of recovery, and in the other case defendant is willing to increase the amount of the recovery. In these instances, the court is not moved to exercise its discretion and grant a new trial, because by action of one or the other party, final recovery has been so modified as to do substantial justice.

Where recovery is decreased with the consent of plaintiff, plaintiff cannot object, because he has consented to it and defendant should not complain of the refusal to grant a new trial, because plaintiff, by his voluntary ac-

tion, has so reduced final recovery that it no longer constitutes an injustice. Where the recovery is increased with the consent of defendant, plaintiff should not complain of the court's refusal to grant a new trial, because defendant by his voluntary action has so increased final recovery that justice will be done to plaintiff; and defendant cannot complain because he has agreed to it.

Whichever way we look at the problem we can see no difference in logic or reason between a voluntary decrease of the recovery by plaintiff or a voluntary increase of recovery by the action of defendant. In both cases the conscience of the chancellor is not moved to set aside the verdict and grant a new trial, because through the voluntary action of one of the parties substantial justice is done. The granting of a new trial in such a case would be to delay the final disposition of the cause at the expense of the public and to the injury of all parties concerned.

Before we come to a definite conclusion on the question before us, we will examine the Constitution of this State and the precedents which we were able to find.

The Constitution of Pennsylvania, art. I, sec. 6, provides that "Trial by jury shall be as heretofore, and the right thereof remain inviolate."

It is our opinion that the allowance of an additur would not be a violation of this constitutional provision. This provision in the Constitution was inserted to assure the substance of trial by jury in criminal and civil cases, as it was at the time of the adoption of the Constitution. The refusal of the court to grant a new trial, provided defendant agrees to a larger verdict, does not violate this constitutional provision. The constitutional provision was intended to protect the substance of trial by jury and is not concerned with irrelevant form. Furthermore, the verdict of the jury is in no way interfered with. It stands as it was when rendered by the jury and in the amount in which it was rendered by the jury. But the

final recovery of plaintiff is larger, because of voluntary action on the part of defendant.

True, plaintiff might claim the right to a new trial so that he may have the amount of the verdict determined by a jury and not by the court. Such a right could not be predicated upon section 6, art. I, of the Constitution of Pennsylvania. That provision guarantees to plaintiff in a civil case the determination of the facts and the assessment of the damages by a jury, but does not entitle him to a new trial, where he deems the verdict inadequate. The granting of a new trial is within the sound discretion of the court. Why should the court exercise its discretion and impose upon the parties and the public expense, inconvenience, and delay, when defendant voluntarily agrees to add to the verdict such a sum as will render the recovery of plaintiff fair and just? It seems logical that in such a case the court has a right to and should refuse to exercise its discretion to grant a new trial.

In view of the many precedents, it cannot be successfully argued that the refusal of the court to grant a new trial, where plaintiff voluntarily agrees to return a part of the verdict, violates section 6 of article I of the Constitution of the Commonwealth of Pennsylvania. We have already determined that the refusal of the court to exercise its discretion and grant a new trial, where defendant voluntarily adds to the verdict, is in all respects similar. In one case plaintiff receives less than the verdict, in the other, more. The one is no more nor less an interference with the verdict of the jury than the other. In fact, neither one is an interference with the determination of the case by a jury, because the verdict remains as rendered.

In the case of Dimick v. Schiedt, 293 U. S. 474, 95 A. L. R. 1150, the Supreme Court of the United States, in a five-to-four decision, determined that a Federal court did not have the power to increase the amount of damages awarded by a jury to plaintiff in an action for per-

sonal injuries, without the consent of plaintiff, although the increase is assented to by defendant. The lower court had made an order that plaintiff's motion for a new trial be granted, unless defendant would consent to an increase of the damages to a sum fixed by the court. The majority of the Supreme Court, led by Justice Sutherland, held that such an order of the court violated the seventh amendment to the Federal Constitution, which reads as follows:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law": U. S. C. Const. part 2, p. 581.

A powerful dissenting opinion was delivered by Justice Stone and was concurred in by Chief Justice Hughes, and by Justices Brandeis and Cardozo.

At the outset it must be noted that the text of the seventh amendment to the Federal Constitution differs from article I, sec. 6, of the Pennsylvania Constitution. This difference in language has been the basis of many decisions of the Supreme Court of Pennsylvania, which define the rights of parties to trial by jury in Pennsylvania courts differently from those in the Federal courts under the seventh amendment to the Federal Constitution.

The opinion of Justice Sutherland in the Dimick case is sweeping. It is based on the belief of the majority of the Supreme Court, that under the common law, as it existed at the time of the adoption of the Federal Constitution, the court had no power to increase the verdict of a jury, and that the power of the court to decrease the verdict, with the consent of plaintiff, is more than questionable.

As early as 1822, Justice Story of the United States Supreme Court, sitting on circuit, refused the granting of

a new trial, provided plaintiff was willing to remit $500 of the damages: Blunt v. Little, 3 Mason 102. The decision of Justice Story was followed by the United States Supreme Court in a large number of cases, but its reasoning is questioned by Justice Sutherland in the majority opinion of Dimick v. Schiedt, supra. In fact, Justice Sutherland indicates that if this question should come before the Supreme Court de novo, it would be decided against the power of the court to refuse the granting of a new trial, on condition that plaintiff remit a part of the verdict. See the language in the Dimick case at page 484, where Justice Sutherland says:

"In the last analysis, the sole support for the decisions of this court and that of Mr. Justice Story, so far as they are pertinent to cases like that now in hand, must rest upon the practice of some of the English judges—a practice which has been condemned as opposed to the principles of the common law by every *reasoned* English decision, both before and after the adoption of the Federal Constitution, which we have been able to find.

"In the light reflected by the foregoing review of the English decisions and commentators, it, therefore, may be that if the question of remittitur were now before us for the first time, it would be decided otherwise. But, first announced by Mr. Justice Story in 1822, the doctrine has been accepted as the law for more than a hundred years and uniformly applied in the federal courts during that time. And, as it finds some support in the practice of the English courts prior to the adoption of the Constitution, we may assume that in a case involving a remittitur, which this case does not, the doctrine would not be reconsidered or disturbed at this late day."

A contrary opinion is reached in the Dimick case by the four dissenting justices, including the Chief Justice. This respectable minority of four outstanding jurists is of the opinion that the power to refuse a new trial, on condition that defendant agree to add to the verdict, is in all respects similar to the power of the court to refuse a

new trial on condition that plaintiff remit a part of the verdict, and that both are within the power of the lower Federal courts. The minority is also of the opinion that the seventh amendment to the Constitution is not violated by the exercise of this power: Dimick v. Schiedt, supra, p. 489:

"The decision of the Court [of the majority in this case] is rested on the ground that the Constitution prohibits the trial judge from adopting the practice. Accordingly, I address myself to the question of power without stopping to comment on the generally recognized advantages of the practice as a means of securing substantial justice and bringing the litigation to a more speedy and economical conclusion than would be possible by a new trial to a jury, or the extent to which that or analogous practice has been adopted and found useful in the courts of the several states. See Correction of Damage Verdicts by Remittitur and Additur, 44 Yale Law J. 318. The question is a narrow one: whether there is anything in the Seventh Amendment or in the rules of the common law, as it had developed before the adoption of the Amendment, which would require a federal appellate court to set aside the denial of the motion merely because the particular reasons which moved the trial judge to deny it are not shown to have similarly moved any English judge before 1791.

"The Seventh Amendment commands that 'in suits at common law,' the right to trial by jury shall be preserved and that 'no fact tried by a jury shall be otherwise re-examined by any court of the United States, than according to the rules of the common law.' Such a provision of a great instrument of government, intended to endure for unnumbered generations, is concerned with substance and not with form. There is nothing in its history or language to suggest that the Amendment had any purpose but to preserve the essentials of the jury trial as it was known to the common law before the adoption of the Constitution. For that reason this Court has often re-

fused to construe it as intended to perpetuate in change-less form the *minutiæ* of trial practice as it existed in the English courts in 1791. From the beginning, its language has been regarded as but subservient to the single purpose of the Amendment, to preserve the essentials of the jury trial in actions at law, serving to distinguish them from suits in equity and admiralty, see *Parsons* v. *Bedford*, 3 Pet. 433, 446, and to safeguard the jury's function from any encroachment which the common law did not permit.

"Thus interpreted, the Seventh Amendment guarantees that suitors in actions at law shall have the benefits of trial of issues of fact by a jury, but it does not prescribe any particular procedure by which these benefits shall be obtained, or forbid any which does not curtail the function of the jury to decide questions of fact as it did before the adoption of the Amendment. It does not restrict the court's control of the jury's verdict, as it had previously been exercised, and it does not confine the trial judge, in determining what issues are for the jury and what for the court, to the particular forms of trial practice in vogue in 1791. . . .

"If we apply that test to the present case it is evident that the jury's function has not been curtailed. After the issues of fact had been submitted to the jury, and its verdict taken, the trial judge was authorized to entertain a motion to set aside the verdict and, as an incident, to determine the legal limits of a proper verdict. A denial of the motion out of hand, however inadequate the verdict, was not an encroachment upon the province of the jury as the common law defined it. It would seem not to be any the more so here because the exercise of the judge's discretion was affected by his knowledge of the fact that a proper recovery had been assured to the plaintiff by the consent of the defendant. Thus the plaintiff has suffered no infringement of a right by the denial of his motion. The defendant has suffered none because he has

consented to the increased recovery, of which he does not complain."

Even if the decision in Dimick v. Schiedt were unanimous, it would not be controlling here, because of the evident difference in language and the evident distinction between section 6, art. I, of the Pennsylvania Constitution and the seventh amendment to the Federal Constitution. After a careful reading of that decision, particularly in the light of Pennsylvania decisions, and in view of the fact that the power of the court to refuse a new trial, on condition that plaintiff remit a part of the verdict, has been practiced since time immemorial and is well established in Pennsylvania, we feel that in Pennsylvania the views expressed by the minority, in the opinion rendered by Justice Stone, are more applicable than the majority views, as expressed by Justice Sutherland.

An examination of the old English cases discloses some cases in which new trials were refused on condition that the verdict of the jury be increased by defendant. They are referred to in 2 Bacon's Abridgment (7th ed.) 611, and Sayer on Damages (1770) 173 et seq. In the case of Burton v. Baynes (1733), reported in Barnes Notes of Cases, 153, 94 Eng. Repr. 852, which was a case of mayhem, the court increased the damages from 11£ 14d., awarded by the jury, to 50£. More recent is the case of Gaffney v. Illingsworth, 90 N. J. L. 490, 101 Atl. 243. That was an action for personal injuries suffered by the alleged negligence of defendant. It resulted in a verdict for plaintiff of $190.25. The court granted a new trial to plaintiff, provided, however, that if defendant paid $480.50 within 10 days, plaintiff's rule for a new trial should be discharged. This was sustained on appeal. See also Risch v. Lawhead, 211 Wis. 270, 248 N. W. 127, where a similar decision was reached. In an article in 48 Mich. L. R. 538 (1934), the following conclusion is reached (pp. 541, 542) :

"In conclusion: The power of the court to set aside excessive and inadequate verdicts is established. When

the verdict is excessive, the remittitur is an accepted means of hastening the final adjudication. And the rule should be that when the verdict is found to be inadequate, the court should deny the plaintiff's motion for a new trial when the defendant consents to a proper increase in the verdict. This would seem to follow logically from a comparison with the remittitur cases and from an analysis of the positions of the parties, as pointed out above."

In the case of Londecka v. City of Pittsburgh, at no. 99 of 1937, in the County Court of Allegheny County, Pa., an order was made by the County Court, sitting in banc, granting a new trial because of inadequacy of the verdict, provided, however, that if within 15 days *both* plaintiff and defendant filed a stipulation agreeing to a larger verdict, then the motion for a new trial should be refused. It will be noted that in that case the county court required the consent to the addition to the verdict of both plaintiff and defendant. Therefore, this order of the county court is not a disposition of the case by the court, but is a suggestion to both parties to settle the case at a figure deemed fair by the court. That case is not authority for the action taken in the case before us.

We are definitely of the opinion that the court has the power to order a new trial for inadequacy of the verdict, with the provision that the new trial will be refused, if defendant shall agree to add a fixed sum to the verdict. We do not believe that the consent of plaintiff to such an order is required to make it valid.

We are of the opinion that the case before us is a proper case for the exercise of this power, in the interest of a speedy and economic administration of justice. We will refuse a new trial, if defendants will agree to add $1,250 to the verdict of $2,500 found by the jury.

*Order*

And now, to wit, September 28, 1938, after argument and upon careful consideration, plaintiff's motion for a

new trial, because of inadequacy of verdict, is hereby re-
fused, provided that defendants, within 15 days from the
date of this order, file a stipulation agreeing to pay the
sum of $3,750, in full settlement of this action; in case
of failure to file such a stipulation by either of defend-
ants, within the time herein designated, a new trial is
granted.