512 F.2d 671
 Luke BONURA, Jr., Plaintiff-Appellee--Cross-Appellant,
v.
SEA LAND SERVICE, INC., Defendant-Appellant--Cross-Appellee,
Atlantic & Gulf Stevedores, Inc., Intervenor.
 No. 74-1012
 United States Court of Appeals, Fifth Circuit.
 Feb. 13, 1975.
Dissenting Opinion April 4, 1975.
 
 Appeal from the United States District Court for the Eastern District of Louisiana, R. Blake West, Judge.
 
 
 1
 Ralph E. Smith, New Orleans, La., for defendant-appellant.
 
 
 2
 Frank J. D'Amico, New Orleans, La., for plaintiff-appellee.
 
 
 3
 Betrand M. Cass, Jr., New Orleans, La., for Atlantic & Gulf Stevedores.
 
 
 4
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 5
 (Opinion Dec. 20, 1974, 5 Cir., 1974, 505 F.2d 665).
 
 
 6
 Before GEWIN, AINSWORTH, and GEE, Circuit Judges.
 
 PER CURIAM:
 
 7
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled as to such Petition for Rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied. A Judge, however, having requested a poll on the question of remittitur and the Court having been polled because of such request and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule) a hearing of such issue en banc was denied.
 
 
 8
 Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.
 
 
 9
 GOLDBERG, Circuit Judge with whom BROWN, Chief Judge, joins, dissenting:
 
 
 10
 I must respectfully dissent from the decision of my brethren not to hear this case en banc. I believe that the standard adopted here for appellate review of trial court remittiturs significantly endangers the effectiveness of the standard which is supposed to guide entry of the award.
 
 I.
 
 11
 The Bonura opinion reads, in relevant part:
 
 
 12
 "[D]efense will be given to the trial court's determination since he, and not the appellate court, was present during the ebb and flow of the trial, and it will be presumed that the amount which he has chosen in the amount which will reduce the jury's verdict to the "maximum possible" award unless the party opposed to the remittitur can point to credible evidence which would support a greater recovery."
 
 
 13
 505 F.2d 665 at 670 (emphasis added).
 
 
 14
 As is clear, the standard enunciated above places the burden on the plaintiff who believes that the remittitur was too great to challenge it and to marshall the evidence in support of that challenge.
 
 
 15
 The displacement of a jury verdict rests on tenuous constitutional grounds. Dimmick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, the only reason to tolerate the remittitur at all under the Seventh Amendment rests on historical practice, and is even contrary to the better reasoned historical cases, The Supreme Court said:In the last analysis, the sole support for the decisions of this court, and that of Mr. Justice Story, so far as they are pertinent to cases like that now in hand, must rest upon the practice of some of the English judges--a practice which has been condemned as opposed to the principles of the common law by every reasoned English decision, both before and after the adoption of the Federal Constitution, which we have been able to find.
 
 
 16
 In the light reflected by the foregoing review of the English decisions and commentators, it therefore may be that if the question of remittitur were not before us for the first time, it would be decided otherwise ....
 
 
 17
 293 U.S. at 484, 55 S.Ct. at 300, 79 L.Ed. at 610. See 3 Barron & Holtzoff, Federal Practice & Procedure (Wright ed.) Sec. 1305.1 p. 376.
 
 
 18
 The Court went on to say that because remittitur has been allowed into judicial practice it was permissible for a trial judge to remit damages when he is "merely lopping off an excrescence". 293 U.S. at 486, 55 S.Ct. 296, 79 L.Ed. at 611.
 
 
 19
 Mirroring this concern with the diminution of jury verdicts, this Court adopted a "maximum which the jury could reasonable find" standard for determining the proper amount of a remittitur. Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F.2d 1033. This court has since followed this standard in cases in which there has been an appeal on the remittitur issue. See Elston v. Shell Oil Co., 5 Cir.1973, 481 F.2d 608; Stewart v. Atlantic Pipeline Co., 5 Cir. 1972, 470 F.2d 738, reh. denied, 474 F.2d 695, mandate substituted, 479 F.2d 311; Jenkins v. Aquatic Contractors and Engineers, 5 Cir. 1971, 446 F.2d 520; United States v. 1160.96 Acres of Land, Holmes County, Miss., 5 Cir. 1970, 432 F.2d 910.
 
 
 20
 The actual jury verdict is not necessarily a referent for the judge in determining the "maximum reasonable award". But Dimmick and Gorsalitx indicate that the trial judge must be careful to give the highest award that the jury could have found. This is not a discretionary standard. The fact that the trial judge may have validly determined that the actual award was too large should not exonerate him from explaining why the particular award he sets is the maximum reasonable amount. Instead, Bonura says that we are to presume that this amount is the maximum: we are presented with a finding without findings of fact, a legal conclusion without points of law. Without an articulated opinion upon which the appellate court can pass judgment, the "maximum reasonable award" standard becomes merely advisory. Cf. Federal Rules of Civil Procedure 52(a).
 
 
 21
 In order to challenge the award, under Bonura, an appellant must present "credible evidence" that the award to too low. Yet Bonura offers no explanation as to why it becomes the appellant's duty to make a de novo challenge to a judicial determination rather than the judge's job to explain how his resolution of the case conforms to the law. The shift of burden will have a very damaging effect in practice, for the basis for determination of awards is often difficult to explicate. In Glazer v. Glazer, E.D.La.1968, 278 F.Supp. 476, cited in both the Gorsalitz and Holmes County opinions, Judge Rubin noted:
 
 
 22
 [I]n many instances the damages are to be measured in whole or in part by the jury's discretion. This is the situation where recovery is sought for a personal tort, where punitive damages are allowed, or where as here the amount of damages depends in part of what is a reasonable term for a contract. In such cases, the fixing of damages is an integral part of the jury's function.
 
 
 23
 278 F.Supp. at 481.
 
 
 24
 The Seventh Amendment tells us that it is up to the jury to determine the facts, and in keeping with thie Dimick informs us that we can only lope off "an excresence". I believe that we must be constitutionally zealous to insure that the trial judge does as much as he can within the law to conform an award to a jury's view of the facts--hence the maximum reasonable award standard.
 
 
 25
 I would have the district court judge bear the burden of substantiating his estimation of damages by making findings of fact and explicating the theory or rationale for the damages. His factual evaluation would, of course, be entitled to some presumption in its favor. But there would be some explicit foundation for the trial judge's action, allowing a basis for appellate review in this constitutionally sensitive area.
 
 II.
 
 26
 The doctrine of remittitur rests on a constitutional base of clay. At some point the doctrine's reach must stop lest it undermine the constitutional right to a jury determination of the facts. We are now casting on the plaintiff-appellant the burden of showing that a rationale jury could have given something closer to what the actual jury gave than want the judge, with all the logic of unexplained intuition, believes it could have given. I need not crystal ball to forecast wholesale denigration on the maximum reasonable award standard and substitution of inexplicable awards as this case becomes the law of the Circuit.
 
 
 27
 I had conceived of jury verdicts having a degree of inviolateness which is rarely traduced, and this, I thought, was the basis for the limiting standard we adopted for those times when we must violate the jury's will. But the Court today choreographs some two step process, backing one more step form the jury. Now, once the judge is allowed onto the floor he may dance with no choreographic design or articulated steps.
 
 
 28
 All of this gives the defendant another day in the judge's mind, not another day in court. The net effect of this opinion will be a tremendous latitudinal and longitudinal extension of the judge's power over the facts; he may pick an award without a word or phrase indicating his reasons for doing so. I think that a judge-made award must have a basis which an appellate court can understand and not merely guess at. I am sorry that my brethren think otherwise.