548 So.2d 1345 (1989)
Roger Keith CLEMENTS
v.
LANLEY HEAT PROCESSING EQUIPMENT, et al.
No. 87-909.
Supreme Court of Alabama.
May 12, 1989.
Rehearing Denied July 14, 1989.
W. Lee Pittman of Pittman, Hooks, Marsh, Dutton & Hollis, Birmingham, for appellant.
James L. Clark and Lynn Baxley Ault of Lange, Simpson, Robinson & Somerville, Birmingham, for appellees.
PER CURIAM.
Plaintiff appeals from a judgment based on a jury verdict in favor of the plaintiff awarding "court costs only" against the defendants. We reverse and remand.
The issues are whether the jury verdict, awarding "court costs" only to the plaintiff, was inconsistent with the jury's finding in favor of the defendants and whether the plaintiff is entitled to a new trial.
Plaintiff, Roger Keith Clements, filed suit under Code 1975, § 25-5-11, for damages based on personal injuries sustained at work. Plaintiff named as defendants: Lanley Heat Processing Equipment, Gallagher-Bassett Services, Inc.; National Can Corporation (plaintiff's employer); Ed Hornbuckle, Frank Mummert, Louis Michael Bridges, and Marvin Walker (supervisory employees and officers of plaintiff's employer).
Plaintiff claimed at trial that defendants had negligently failed to provide a reasonably safe work environment, and he sought damages for pain and suffering and $8,682.36 in medical expenses. Defendants alleged contributory negligence, but did not dispute the amount of medical expenses.
The trial court charged the jury that if the jury found that Clements "was guilty of negligence, and his own negligence either caused or contributed to cause his injuries and damages, then that is an absolute defense to [his] claim"; that if Clements "was guilty of contributory negligence, then it is a complete defense"; and that if the jury was reasonably satisfied that "the defendants have sustained the burden of proof on contributory negligence, that is a case of mutual fault and again, the plaintiff would not be entitled to recover."
The trial court further instructed the jury in regard to its verdict:
"If you find in favor of the plaintiff, Roger Keith Clements and against all of *1346 the defendants, all you have to do is X out the bottom half of this first page and fill in the amount of the damages to be awardedit is that simplein words and figures....
"Now, on the other hand, this would permit you to find in favor of the plaintiff and against less than all of the defendants or in favor of less than all of the defendants. That device simply works this way. And I'm not going to go through it one by one, but if you find in favor of the plaintiff and against two of the defendants, just simply circle their names striking out the others, and circle the remaining defendants down here and you will have a complete account of the transaction. Do you understand that? Sure. All right.
"On the other hand, if it is the decision of the jury that you are to render a decision in favor of all the defendants, the verdict that expresses that result is the second page which says, `We the jury find in favor of all the defendants.' And again they are all named there."
The jury returned the following verdict:

After the jury verdict was returned, the trial court polled the jury and found that the jury had unanimously found in favor of Clements and against defendants Hornbuckle, Mummert, Bridges, and Walker and had assessed Clements's damages at the sum of "court costs only" and that the jury found in favor of defendants Lanley Heat Processing Equipment, GallagherBassett Services, Inc., Coy Head, and David Tharpe. In the case action summary, the trial court entered the following finding and order:

*1347 "The court polled the jury and determined that the above and foregoing verdicts were unanimous. The court further finds and determines that `court costs' are not a proper element of damages and that the jury was not instructed on court costs being an element of damages. Accordingly, the court finds that the legal effect of the jury verdict is a decision in favor of all the defendants. Therefore, judgment ... is hereby entered in favor of all defendants with court costs taxed to the plaintiff."
The plaintiff based his motion for new trial on three grounds: (1) that the verdict failed to give substantial compensation for substantial injuries suffered by the plaintiff; (2) that the damages awarded were not sufficient to compensate for proven expenses without any damages for pain and suffering; and (3) that "[t]he verdict is so opposed to the clear and convincing weight of the evidence presented as to damages that it clearly fails to do substantial justice and suggests that the verdict was the result of passion, prejudice, or improper motive." The trial court denied plaintiff's motion for a new trial.
The trial court correctly charged that, for a plaintiff to recover under a negligence theory, there are four essential elements that must be proven to the jury's reasonable satisfaction: duty, breach (initial legal liability), causation, and damages. Jones v. Newton, 454 So.2d 1345 (Ala.1984). Therefore, for the jury to find for the plaintiff, all four elements must have been resolved in plaintiff's favor, for the absence of any one element would require a verdict for the defendants. The trial court concluded that because the jury awarded "court costs only," which are not an element of damages on which the jury received instructions, there was a failure to find each essential element of negligence and, therefore, that the verdict was a verdict for the defendants. However, the record shows that each juror found in favor of the plaintiff and against defendants Hornbuckle, Mummert, Bridges, and Walker. Therefore, the plaintiff did not fail to prove all of the elements of negligence to the jury's reasonable satisfaction.
We hold that the plaintiff is entitled to a new trial, on the authority of Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980).
The jury's finding for the plaintiff necessarily embraced all of the elements of the negligence claim, including the element of injury and resultant damages. To so find, and then award "court costs only" and no compensatory damages, is inconsistent on its face, as a matter of law. The trial court should have afforded the plaintiff a new trial on the basis of the inconsistency of the award of no damages when that award is juxtaposed with the jury's finding of the defendants' liability. Its refusal to do so was reversible error. Stinson, supra; see also Ward v. Diebold, Inc., 486 So.2d 1261 (Ala.1986), and Monteleone v. Trail Pontiac, Inc., 395 So.2d 1003 (Ala.Civ.App.1980), cert. denied, 395 So.2d 1005 (Ala.1981).
The judgment is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
MADDOX, ALMON, ADAMS, STEAGALL, and KENNEDY, JJ., concur.
HORNSBY, C.J., and JONES and HOUSTON, JJ., concur in the judgment of reversal, but dissent from the grant of an unconditional new trial.
HORNSBY, Chief Justice (concurring in the judgment of reversal, but dissenting from the grant of an unconditional new trial).
I write to express my view that the practice of additur, rejected by the federal courts and described in the literature, but rarely if ever observed in practice in Alabama, should be an available tool in modern practice.
In calling for the recognition of additur, I must quickly point out that I strongly defend the role of the jury in our system of justice.
"We begin by recognizing that the right to a trial by jury is a fundamental, constitutionally guaranteed right, Art. I, *1348 § 11, Const. of 1901, and, therefore, that a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection....
"The cases have consistently held that in deciding whether a jury verdict is excessive because it is the result of passion, bias, corruption, or other improper motive, a trial judge may not substitute his judgment for that of the jury. B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979); Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963)....."
Hammond v. City of Gadsden, 493 So.2d 1374, 1378 (Ala.1986).
In Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the United States Supreme Court reluctantly recognized the validity of remittitur practice and rejected additur. Legal scholars have subsequently tried to articulate a reasonable explanation of why remittitur does not violate the right to trial by jury and additur does.
"In neither case has the amount fixed by the court been found as the verdict of a jury. The deception in the attempted differentiation arises because this fact is obvious in the case of an additur, but in the case of a remittitur may be obscured in a haze of abstract mathematics which has nothing to do with a true solution of what the jury actually decided."
Carlin, Remittiturs and Additurs, 49 W.Va.L.Q. 1, 29 (1942).
"The injury to the defendant in the case of a remittitur is neither greater nor less than the injury to plaintiff by the additur. Furthermore, the distinction developed in the majority opinion may be met upon its own technical basis. Realistically considered, the jury's selection of a certain quantum of damages as compensation for the injury sustained is a decision that all other amounts, both greater and less, are in its opinion incorrect. The jury has expressed its opinion, therefore, upon all amounts from zero to the sum claimed, not merely from zero to the amount found. Thus interpreted, the increased damages finally approved by the court have actually been passed upon by the jury, and are a part of its verdict. In the one case, the court indicates the portion of the verdict it deems excessive; in the other, it indicates the portion of the jury's decision it deems inadequate. Admitting, then, the propriety of the one practice, we must likewise sustain the other."
Note, Constitutional LawRight to Jury TrialJudicial Use of Additur in Correcting Insufficient Damage Verdicts, 21 Va.L.Rev. 666, 674 (1935).
"Remittitur is supported, justified, and applied in a majority of courts. Additur is not, however, viewed as a necessary concomitant of the power of the court to reduce an excessive verdict. Yet it would appear that the basic rationale supporting both concepts is the samethe amount of the verdict reached by the jury, whether due to clear bias, inadvertence, or misunderstanding, is not supported by the evidence adduced at trial. Both concepts are designed to clear the courts of unnecessary re-trials of disputes that should have been finally resolved at trial. Both are practical and laudable attempts to simplify court procedure without causing undue prejudice to either party to the litigation.
"History discloses that remittitur in American courts was born in 1822, from the judicially unsupported conclusion of one highly-respected federal judge. The wisdom and practicality of the decision in this court, albeit unprecedented, was recognized by subsequent courts, and the fact that this practice of remittitur had no other judicial foundation was wisely and effectively `soft-pedaled' to allow a just and efficient practice to evolve.
"Additur in theory would alleviate the same basic problem as remittitur, but unfortunately no far-sighted champion of that concept has yet stepped forward effectively in its behalf. As the views expressed by some judges noted in the foregoing discussion point out, remittitur impinges on the right of trial by jury in the same or similar manner as does additur. There is no valid or logical reason for allowing the one and refusing the other. Since the aim and purpose of *1349 both is remedial and practical, and since remittitur has already achieved wide recognition and acceptance, this writer is of the view that both remittitur and additur should be put into practical application in the courts, rather than the alternative backward step of repudiating both and allowing neither."[1]
M. Newsome, Additur and Remittitur in Federal and State Courts: An Anomaly? 3 Cumb.-Samford L.Rev. 150, 163 (1972). While I may not be the "far-sighted champion" the author was looking for, I agree with his analysis and suggest that additur be "`soft-pedaled' to allow a just and efficient practice to evolve."
Finally, while I basically agree with Justice Houston's separate opinion, which sets forth the legal history of remittitur and additur and the precedent for additur in Alabama jurisprudence, I would remand for the trial court to consider the additur option without reference to what we consider to be the reasonable minimum verdict. I would do that because I doubt that the trial judge even entertained the notion of additur when he ruled on the motion for new trial. It does not appear that either party raised the issue of additur. Therefore, I would not want to suggest an amount to the trial judge, who should have the first opportunity to arrive at a figure, after hearing the parties' arguments regarding what a proper sum would be.
HOUSTON, Justice (concurring in the judgment of reversal, but dissenting from the grant of an unconditional new trial).
My dissent is based on a very narrow point. I would not affirm the judgment; rather, I would order an additur of damages and then would reverse and remand for a new trial if the defendant refused to accept this Court's order of additur.
Clements appeals and states the issue for review as follows:
"Is a new trial due to be granted when the jury returns a verdict in favor of the plaintiff, but awards only court costs where the damages proved in excess of that amount are undisputed?"
I would answer in the affirmative, on authority of Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980), but I would condition the grant of that new trial on the defendants' refusal to accept an additur of damages.
The history of trial by jury records a continuous struggle to prevent the rendition of unreasonable verdicts. Very early, courts used the "attaint" to prevent the rendition of unreasonable verdicts by a jury. A second jury made up of "knights or other more considerable persons than the first [jury]," J. Thayer, A Preliminary Treatise on Evidence at the Common Law, at 140 (1898), passed again on the same issue, with the original parties and also the first jury as parties. If this more prestigious second jury found the verdict of the first jury false, the verdict would be reversed and the first jury severely punished. Thayer, at 141. The "attaint" was replaced by the practice of fining the jury for misbehavior when the judge seriously disagreed with the verdict. Smith, The Power of the Judge to Direct a Verdict, 24 Colum.L.Rev. 111, 112 n. 46. This practice ended with Bushnell's Case, 124 Eng.Rep. 1006 (C.P.1670), when the Court of Common Pleas freed, on habeas corpus, jurors who had been fined and imprisoned for acquitting two gentlemen prominent in the Quaker movement and the colonization of this country for taking part in an unlawful assembly. With attaint obsolete and with fining and imprisoning jurors no longer possible, the courts extended their jurisdiction by adopting the remedy of granting new trials in cases of jury misconduct. The first case in which a new trial was granted on the ground that the verdict was inconsistent with the weight of the evidence preceded Bushnell's Case, supra, by 15 years. See, Wood v. Gunston, 82 Eng.Rep. 867 (K.B.1655). But after Bushnell, an order granting a new trial was the procedure *1350 used to correct an unreasonable jury verdict.
Although the granting of a new trial infringes upon the first jury's findings and verdict, it does so at the latest point in the trial proceedings; it does so with the least intrusion upon the right to trial by jury, consistent with imposing necessary limits upon a jury's power, for the factual issues are tried by another jury and not by the trial court; and, regardless of the subsequent jury's verdict, there is no attaint, fine, or imprisonment of the first jury.
The trial court correctly charged that, for a plaintiff to recover under a negligence theory, there are four essential elements that must be proven to the jury's reasonable satisfaction: duty, breach (initial legal liability), causation, and damages. Jones v. Newton, 454 So.2d 1345 (Ala.1984). Therefore, for the jury to find for Clements, all four elements must have been resolved in Clements's favor, for the absence of any one element would require a verdict for the defendants. The trial court concluded that since the jury awarded as damages only court costs, which are not an element of damages that he instructed the jury on, there was a failure to find each essential element; and, therefore, that this was a verdict for the defendants. However, the record affirmatively shows that each juror found in favor of Clements and against defendants Hornbuckle, Mummert, Bridges, and Walker. Therefore, there was not a failure of Clements to prove one of the essential elements to the jury's reasonable satisfaction. "To so find, and then award no damages, is inconsistent on its face as a matter of law." Stinson v. Acme Propane Gas Co., 391 So.2d at 661.
A new trial may be granted for excessive or inadequate damages. Alabama Code 1975, § 12-13-11(a)(4); Rule 59(a), A.R.Civ.P. The verdict must be within the bounds of reason of the judicial mind, even if that exceeds or is less than any particular judge's life experiences would have it be.
By Rule 59(f), A.R.Civ.P., the trial court is given the power to grant a remittitur as a condition to the overruling of a motion for a new trial predicated upon the excessiveness of the jury's verdict.
"The granting or ordering of a remittitur, however, is conditioned on the fact that a motion for a new trial on the ground of excessive damages must be made by the defendant following the verdict of the jury [Fallaw v. Flowers, 274 Ala. 151, 146 So.2d 306 (1962)]. If no such motion is made, the lower court is without authority to order the remittitur on its own motion, and an appellate court would not have the question before it on appeal."
M. Newsom, Additur and Remittitur in Federal and State Courts: An Anomaly? 3 Cumb.-Samford L.Rev. 150, 156 (1972). There is statutory authority for an appellate court to grant a remittitur. Alabama Code 1975, § 12-22-71.
However, no statute or rule of procedure authorizes a trial court or an appellate court to grant an additur of compensatory damages,[1] where, as in the case before us, the plaintiff has filed a motion for a new trial on the ground of inadequate damages following the verdict of a jury, and the trial court has "overruled and denied" this motion.
Perhaps this is understandable, if at all, only by reviewing the curious history of remittitur and additur in the federal courts. Judge Story in Blunt v. Little, 3 F.Cas. 760 (C.C.Mass.1822), first introduced remittitur into American jurisprudence. The United States Supreme Court in Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), pragmatically accepted the practice of remittitur in the federal courts because of more than 100 years of acceptance and uniform application; however, it stated, "[I]f the question of remittitur were now before us for the first time, *1351 it would be decided otherwise." 293 U.S. at 484, 55 S.Ct. at 300. In Dimick, the United States Supreme Court was confronted for the first time with the concept of additur. After reviewing the history and authority for the doctrine, the Court, in a five-to-four decision, with Chief Justice Hughes and Justices Brandeis, Stone, and Cardozo dissenting, found that the English reports, prior to the adoption of the American Constitutional guarantee of the right to trial by jury (7th Amendment) in 1791, failed to disclose any authoritative decisions sustaining the power of English courts to increase, either absolutely or conditionally, the amount fixed by a jury in an action at law, except in actions for mayhem, and held that the concept of additur was violative of the Seventh Amendment of the United States Constitution.
In Kraas v. American Bakeries Co., 231 Ala. 278, 164 So. 565 (1935), Justice Knight observed that the Seventh Amendment to the United States Constitution had no application in state court proceedings and held that "in cases where the amount to be added to, or subtracted from, the verdict is clearly and definitely established by the proof, the court would have the authority to make the addition or subtraction." 231 Ala. at 283, 164 So. at 569. Justice Knight further wrote that the trial judge, by increasing the amount of the jury award to include the amount of the plaintiff's "doctors' bills, medicine, and hospital services [that had been improperly excluded from the jury,] ... pursued a course which tended to make `the administration of the law * * * the administration of justice.' Baxter v. Chicago & N.W.R. Co., 104 Wis. 307, 336, 80 N.W. 644, 655 [(1899)]."
However, in Kraas, the trial court did not increase the jury award beyond the amount of the doctors' bills, medicine, and hospital services, and this Court, on appeal by the plaintiff, reversed and remanded because this Court was "fully convinced that the damages awarded the plaintiff by the jury for her personal injuries, including mental and physical pain and suffering, and for loss of time, were, under the evidence, inadequate, and so much so as to impress the judicial mind that the verdict was wrong and unjust." 231 Ala. at 284, 164 So. 565. This Court did not conditionally increase the amount of the jury's verdict to the minimum amount that it would take to "impress the judicial mind" that the verdict was not inadequate, nor did it direct the trial court to do so. This Court remanded for a new trial because of the inadequacy of the damages.
I see no difference in remittitur or additur in Alabama. Both are procedural devices to achieve judicial economy through a conditional grant of a motion for a new trial, necessitated by either an improperly functioning jury or a properly functioning jury from which evidence essential to assessing a proper amount of damages is withheld. See, Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989).
The facts of each case and the applicable law impose reasonable bounds upon the maximum and minimum amounts a jury can award in a case if it finds for a plaintiff, a counter-plaintiff, or a cross-plaintiff.
To paraphrase J. Hoffman and W. Schroeder, Burdens of Proof, 38 Ala.L.Rev. 31, 36 (1986), when all attempts to quantify or describe what is an excessive or an inadequate verdict fail, as they ultimately do, the court must depend upon its own life experiences and its willingness to uphold a verdict with which it disagrees, without conditionally granting a new trial unless the plaintiff accepts a lower verdict or conditionally granting a new trial unless the defendant accepts a higher verdict, if the jury's verdict is within the bounds of reason. If the jury verdict exceeds the bounds of reason by being too great or too small, and a defendant files a motion for a new trial on the ground of excessive damages or the plaintiff files a motion for a new trial on the ground of inadequate damages, then I would hold that the trial court may grant a new trial conditioned upon the refusal to accept a remittitur or an additur.
In keeping with the right to a trial by jury, when there is an excessive verdict, the trial court should remit only that portion of the verdict that exceeds the maximum *1352 amount a reasonable jury could have awarded in the case, as perceived by the judicial mind; and, when there is an inadequate verdict, the trial court should add only that amount to the verdict that will bring it within the minimum bounds of reason as perceived by the judicial mind. I would hold that a new trial must be granted unless the remittitur is accepted by the plaintiff or plaintiffs in whose favor the jury assessed the damages; or unless the additur is accepted by the defendant or defendants against whom the damages were assessed.
In this case, I find uncontroverted evidence of reasonable and necessary doctors' bills of $6,655.90 to treat Clements's injuries and that the reasonable and necessary hospital expenses incurred as a result of these injuries were $2,026.46. Therefore, the uncontroverted evidence of special damages was $8,682.36. I have read the testimony and am persuaded that Clements sustained pain and suffering. I am persuaded that the minimum amount that it would take to "impress [my] judicial mind" that the verdict was not inadequate to compensate for pain and suffering, under the facts in this case, is an amount equal to the amount of the reasonable and necessary doctors' bills and hospital expenses incurred as a result of these injuries$8,682.36.
Therefore, because I believe Clements overcame the presumption of correctness that attached to the jury's verdict, by proving its inadequacy, I would reverse the judgment and remand the cause for a new trial against Hornbuckle, Mummert, Bridges, and Walker, but I would condition the grant of that new trial upon the defendants' failure to accept, within 30 days of this judgment, an additur of $17,364.72.
JONES, J., concurs.
NOTES
[1] See Sann, Remittiturs (And Additurs) In The Federal Courts: An Evaluation with Suggested Alternatives, 38 Case W.Res.L.Rev. 157 (1987-88), for arguments for abolishing both procedures.
[1] Alabama Code 1975, § 6-11-23, provides, in regard to punitive damages, that "the trial court shall independently ... reassess the nature, extent and economic impact of such an award of punitive damages, and reduce or increase the award if appropriate in light of all the evidence." (Emphasis added.)