This is an action by a mortgagor (Frederick Odom) against a title insurance company (Mississippi Valley Title Insurance Company or MVT) for breach of contract, and by Odom against Bobby J. Rockhold and Lois Rockhold for fraud and breach of lease agreement.
Odom and Rockhold were both in business building swimming pools. They entered into an oral agreement whereby Odom would construct a building on Rockhold's property from which they could both operate their business. Approximately two years after the building was completed, Rockhold informed Odom of the existence of a judgment against the aforementioned property that had existed for some five years and, at that time, was in excess of $40,000. Rockhold advised Odom that the creditor, Heldor Industries, Inc., was preparing to levy and execute its judgment against the property, and that Odom could protect his interest by purchasing the property from Rockhold for $100,000. An agreement was reached whereby Odom would purchase the property for said $100,000 with a down payment of $15,000, and Rockhold would remain on the property pursuant to a lease back provision for $600 per month paid to Odom. Odom secured financing from Alabama Federal Savings Loan Association, later Secor Bank, to purchase the property. Apparently the understanding between Odom and Rockhold was that the down payment on the property was to be used by Rockhold to satisfy the Heldor judgment and, before closing on the property, Odom gave a check for $15,000 to Rockhold's attorney, Norm Davis, which contained language indicating that it was for "full and final settlement" of the judgment on the property. The remaining amount of the purchase price was paid at the closing and the property was conveyed from Rockhold to Odom.
Odom purchased title insurance for himself and for his lender, Secor Bank, from MVT. The record reflects that MVT knew of the Heldor judgment prior to closing, but believed that it was to be satisfied, though MVT never received any written cancellation of the judgment and did not take further action to ascertain whether the judgment had been satisfied. MVT insured that the property was free of all liens and encumbrances. Unbeknownst to Odom, Heldor refused the $15,000 offer to satisfy the judgment. After the attempt to satisfy the judgment was unsuccessful, Davis tendered the $15,000 to Rockhold, who spent the money without notifying MVT or Odom. Odom learned that the judgment had not been satisfied when he received a letter from Heldor's attorney, Russell Terry, informing him of Heldor's intent to execute the judgment against the property he had purchased from Rockhold. At this point, Odom contacted MVT to inform it of the Heldor judgment as well as some delinquent property taxes due. MVT paid the property taxes but could not reach a satisfactory agreement with Heldor. In fact, it was not until over a year after Odom had requested that MVT satisfy the Heldor judgment, three weeks prior to the trial which gave rise to this appeal, that MVT reached an agreement with Heldor and met its obligation to discharge the judgment.
During the interim, Odom began to experience financial difficulties, compounded by Rockhold's failure to pay his $600 per month rent. Odom attempted to sell the property, as he was unable to make the mortgage payments. Odom was unable to sell the property. At trial, Odom maintained that it was the existence of the Heldor judgment that prevented his being able to sell the property. MVT disputed *Page 1157 
this, arguing that the judgment was not the cause of Odom's financial trouble and, further, offering evidence of personal judgments and tax liens against Odom which also encumbered the property. Secor Bank finally foreclosed on the property against Odom.
The jury returned a verdict in favor of MVT and in favor of Rockhold on the fraud claim, and in favor of Odom and against Rockhold for breach of the lease agreement in the amount of $1200. Odom filed a motion for a new trial asserting that the verdict in favor of MVT was against the great weight and preponderance of the evidence; that it was inconsistent with the court's directed verdict; and that it was the product of bias or improper motive as to the jury's forewoman who, at the conclusion of the trial, disclosed that she knew MVT's counsel. Odom also filed a motion for judgment notwithstanding the verdict asserting that the jury's verdict was inconsistent with the trial court's directed verdict and that, notwithstanding the directed verdict, the jury effectively awarded him zero damages. The trial court denied these motions and Odom appeals.
Odom enumerates six issues for our consideration:
1. Did the trial court err in failing to grant Odom's motions for new trial and judgment notwithstanding the verdict in light of the inconsistencies of the verdicts?
2. Did the trial court err in charging the jury on the issue of damages for the breach by MVT of its policy of title insurance?
3. Did the trial court err in granting summary judgment in favor of MVT on Odom's claim for bad faith refusal to pay a claim?
4. Did the trial court err in failing to grant Odom's motion for a new trial based on the improper conduct of the jury forewoman?
5. Is the verdict in favor of Rockhold on the issue of fraud against the great weight and preponderance of the evidence?
6. Is the verdict awarding $1200 to Odom based on his lease agreement with Rockhold contrary to law and against the weight and preponderance of the evidence in this case?
It is well settled that, in Alabama, when a jury's verdict is inconsistent it should be set aside and a new trial should be granted. To find in favor of a plaintiff and then to award no damages is inconsistent as a matter of law. For the trial court not to afford a plaintiff a new trial when faced with an inconsistent verdict is reversible error. Clements v. LanleyHeat Processing Equipment, 548 So.2d 1345 (Ala. 1989); see alsoWard v. Diebold, Inc., 486 So.2d 1261 (Ala. 1986), andMonteleone v. Trail Pontiac, Inc., 395 So.2d 1003
(Ala.Civ.App. 1980), cert. denied, 395 So.2d 1005 (Ala. 1981).
For the trial court to direct a verdict in favor of Odom and the jury to award zero damages is clearly inconsistent and, therefore, it was reversible error to deny Odom's motion for a new trial. MVT maintains that the trial court did not direct a verdict in Odom's favor. We do not agree. The trial court could not have been clearer when, during an exchange with MVT's attorney, the court stated "I'm directing a verdict against your client for actual damages. Period. I don't want to hear anything more about that."
With regard to Odom's position that the trial court erred with regard to its jury instructions in that the damages were limited to those solely due to lost sales of the encumbered property, we agree. Though the record indicates that, after Odom's objections to the initial jury instructions, the trial court modified its instructions to include damages resulting from diminished property value resulting from the judgment lien, the modification was not sufficient to meet the requirements of Stewart Title Guaranty Co. v. Goldome CreditCorp., 494 So.2d 10 (Ala. 1986), a case we find to be directly on point. In Stewart, our supreme court affirmed the circuit court which had granted summary judgment in favor of the plaintiff, Goldome, and had awarded damages in the amount of the *Page 1158 
face value of the title policy. The defendant, Stewart, had argued along the same lines as MVT does in the instant case, maintaining that it had acted within a reasonable time after notification and that the plaintiff had not suffered any loss. The supreme court stated as follows: "The crucial fact that undercuts all of these arguments is the fact that Stewart's agents knew of the FmHA mortgage at the time Stewart issued the policy, but did not ascertain that the promised release took place." Stewart, supra, at 12. In the instant case, MVT's agent, Benjamin McGhee, testified that he knew of the judgment and, though he thought that it had been taken care of at closing, he never ascertained that the cancellation had taken place; the policy was issued insuring that the property was free and clear, though there was never any written record of a cancellation of the judgment until 1990.
MVT argues that Odom failed to properly object to the jury instructions under Rule 51, A.R.Civ.P., to preserve the error for review, in that the grounds for the objection to the charges were insufficient. We do not agree. When preserving for review an erroneous instruction, it is not necessary to give a discourse on the applicable law of the case, only that the grounds be adequately specific. Nelms v. Allied Mills Co.,387 So.2d 152 (Ala. 1980). Odom took exception to the trial court's instructions and cited a specific case containing the applicable law in the State of Alabama, which we hold to be sufficient. We hold that the trial court should instruct the jury in accordance with Stewart, supra.
Next, Odom contends that the trial court erred in granting summary judgment in favor of MVT on Odom's claim for bad faith. We do not agree. In National Security Fire Cas. Co. v. Bowen,417 So.2d 179 (Ala. 1982), our supreme court set out the elements a plaintiff must prove in a bad faith refusal case:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The 'debatable reason' under (c) above means an arguable reason, one that is open to dispute or question."
417 So.2d at 183.
This is a heavy burden. Under ordinary circumstances, if any evidence is produced by either side that creates an issue of fact with regard to the validity of the claim and, thereby, the validity of the insurer's denial, the bad faith claim should not be submitted to the jury. National Savings Life InsuranceCo. v. Dutton, 419 So.2d 1357 (Ala. 1982).
In the instant case, there was evidence that MVT believed Heldor had intended to settle the claim for $15,000, much less than the $47,000 Heldor later demanded and, in fact, Heldor did end up settling for nearly fifty percent less after negotiations and litigation. MVT's conduct does not rise to the level of bad faith, in that they had a sufficient factual basis for negotiating, and ultimately litigating with Heldor to settle the judgment.
Because we have already held that this case is to be remanded for a new trial, the question of improper conduct on the part of the jury's forewoman is moot; thus we pretermit any discussion of it. *Page 1159 
As to the remaining issues for our review, both involving the Rockholds, Odom has failed to preserve any question for our review, in that he made no motion for a new trial or for a motion for judgment notwithstanding the verdict with regard to the Rockhold verdicts. It is clear that to preserve the question as to the weight of the evidence, the issue must be raised in the motion for new trial or the motion for judgment notwithstanding the verdict; therefore, we have nothing to review as a matter of law. See Rule 50, A.R.Civ.P.; State FarmMutual Automobile Insurance Co. v. Robbins, 541 So.2d 477 (Ala. 1989); Vaughan v. Wann, 502 So.2d 760 (Ala. 1987). Also, where the case is tried before a jury, a motion for a new trial is necessary to invoke a ruling, before the appellate court will pass on the weight of the evidence or review findings of the jury. Horn v. Smith, 292 Ala. 503, 296 So.2d 719 (1974).
For the reasons stated above, the judgment of the trial court is due to be affirmed in part and reversed in part, and the cause remanded with instructions.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
RUSSELL, J., concurs.
ROBERTSON, P.J., concurs in part and dissents in part.