ALMON, Justice.
Mississippi Valley Title Insurance Company (“MVT”) appeals from a summary judgment against it awarding Frederick W. Odom $100,000, the full amount of the contract of title insurance on which Odom bases his action. When Odom purchased the real property insured by MVT’s title policy, an existing judgment lien was neither satisfied nor excepted from the policy’s coverage. Approximately three years later, Odom brought this action, alleging that MVT had breached the contract by refusing to pay the judgment creditor. An earlier appeal after a trial in this action was addressed in Odom v. Mississippi Valley Title Ins. Co., 582 So.2d 1154 (Ala.Civ.App.1991). After the remand by the Court of Civil Appeals, the trial court entered the summary judgment at issue here. MVT argues that Odom has not suffered any loss or damage and thus that he is not entitled to recover under the policy; or, at least, that jury questions are presented as to whether MVT acted reasonably in curing the title defect and as to the amount, if any, of Odom’s damages.
The following statement of the evidence is taken largely from the trial held before the prior appeal; see also the opinion of the Court of Civil Appeals. The evidence is to be viewed in a light most favorable to the nonmovant, MVT. Rule 56, Ala.R.Civ.P.; Lee v. City of Gadsden, 592 So.2d 1036 (Ala.1992).
Odom purchased the property in question on May 30, 1986, from Bobby Rockhold and Lois Rockhold, husband and "wife. In 1984, Bobby Rockhold (“Rockhold”), had approached Odom with the suggestion that Odom construct a building on the property for Odom and Rockhold to occupy in operating their separate businesses. About two years after the building was completed, Rockhold informed Odom of a 1981 default judgment against Rockhold in the amount of $31,050 that had been recorded in the real property records and constituted a lien on the property. Odom testified that Rockhold told him that the owner of the judgment was preparing to execute on the lien and that if it did so, Odom would lose his building. To prevent this loss, Odom said, he agreed to buy the property for $100,000.
Odom gave a $15,000 down payment that was to be used to satisfy the judgment lien. He gave the payment to Norm Davis, Rock-hold’s attorney. Odom testified:
“Well, Bobby had told me that he had it settled out of court if it was paid right away. So, I called Norm Davis, and I asked him, I said, ‘Do you have this hen satisfied?’ And he said, ‘As soon as I get fifteen thousand dollars, it will be.’ So I wrote a check, which is right here, to Norm Davis for fifteen thousand dollars, carried it to his office, picked up the receipt, and that was it.”
Typed on the check are the words, “Full & final settlement to Airwick Pool Products, Inc.,” and “Downpayment on land on 5708 Three Notch Rd.” Airwick Pool Products, Inc., or its successor in interest, Heldor Industries, Inc., was the judgment creditor.
Ben Magee, who did business through his company, Title Guaranty and Abstract Company of Mobile, served as the issuing agent of the MVT owner’s title policy that Odom purchased and of a mortgagee’s policy for Odom’s mortgagee. Magee testified that he relied on information from Davis that a settlement had been reached to pay the judgment and that the lien would be cancelled. Magee also closed the sale and the loan, and *1014 did so without verifying that the judgment had been satisfied and the lien cancelled. Odom testified that both Magee and Rock-hold stated at the closing that the judgment “was taken care of.” Davis was unable to complete the- settlement, and he returned the $15,000 to Rockhold. Neither Davis nor Rockhold informed Magee or Odom of the failure to cancel the lien.
In November 1988 Rockhold attempted again to settle the judgment. Heldor sent a letter to Rockhold showing that, when it took its default judgment against him for $31,050, the actual amount due was $14,997. Rock-hold had paid a substantial amount of the indebtedness, but the default judgment did not give him credit for his payments. Nevertheless, Heldor’s attorney rejected Rock-hold’s settlement offer. After those efforts were unsuccessful, Heldor’s attorney sent a letter to Odom in December 1988, advising him that Heldor’s judgment had a current balance of $46,560 and constituted a hen on his property. The letter suggested that, if Odom had purchased title insurance, he should notify his title insurance company and ask the insurer to communicate with Heldor’s attorney.
Odom showed Magee the letter from Hel-dor’s attorney. Odom testified that he did not “get any satisfaction” from Magee.[1] According to Odom’s testimony, he then tried to sell the property, but his prospective buyers lost interest when they learned of the Heldor judgment lien. However, MVT introduced substantial evidence to contradict this evidence that Odom suffered damage or loss because of the existence of the lien; on Odom’s summary judgment motion, the evidence is to be viewed in a light most favorable to MVT. When he bought the property, Odom borrowed $165,000, of which only $85,-000 or $100,000 was used to purchase the property. This loan was secured by a mortgage on the property, and the payments were about $1750 per month. As part of the sale agreement, Rockhold had promised to rent part of the property and pay Odom $600 per month, but he never made any payments. In December 1988, therefore, Odom was having difficulty making the payments on the loan, and this was his reason for attempting to sell the property.
The evidence indicates, however, that the property was worth no more than $180,000; Odom listed it for sale at $195,000. In addition to the mortgage, the property was encumbered by a $41,000 judgment entered against Odom in September 1986 and recorded as a lien against the property. An $18,-000 lien for Odom’s federal taxes also attached in July 1989. Odom did not significantly reduce the balance on the $165,000 mortgage. Thus, if the Heldor hen had not existed[2] and Odom had sold the property in December 1988 or thereafter for his full asking price, the sale proceeds would not have satisfied the debt secured by the property. Of course, under such a favorable sale, Odom would have significantly reduced his indebtedness. However, MVT introduced evidence that the property was worth substantially less. Its expert witness appraised the property at $160,000. Odom defaulted on the mortgage in 1989, and the mortgagee foreclosed. At the foreclosure sale in September 1989, the mortgagee purchased for $150,000, leaving a deficiency of approximately $23,000 on the mortgage balance. A year later, the mortgagee sold the property for $135,000.
Thus, viewing the evidence most favorably to MVT, a jury could find that, if the Heldor lien had not existed and Odom had been able to sell the property, but for only $150,000 or $160,000, he would have fared little or no better than he did with the Heldor lien in existence — he would have sold the property for less than the mortgage indebtedness. Even if a jury finds that the Heldor lien in *1015 fact prevented Odom from selling the property or otherwise caused him damage or loss, and that a breach by MVT caused such damage as he might be able to prove, Odom has not established conclusively that he has suffered $100,000 or more in damage. Thus, the evidence does not support a holding that, as a matter of law, Odom has suffered damage equalling or exceeding the $100,000 face amount of the policy.
Under the terms of the title policy, both Odom’s actual loss and the reasonableness of MVT’s attempts to cure the title defect are important factual considerations. The MVT policy insures “against loss or damage ... sustained or incurred by the insured by reason of: ... [a]ny defect in or lien or encumbrance on such title [or] [u]nmarketability of such title.” The policy excludes from coverage “Defects, liens, encumbrances, adverse claims, or other matters ... resulting in no loss or damage to the insured claimant.” The policy includes the following conditions and stipulations:
“3. Defense and Prosecution of Actions — Notice of Claim to be given by an Insured Claimant
“(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.
“(b) The insured shall notify the Company promptly in writing (i) in case any action or proceeding is begun or defense is interposed as set forth in (a) above, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest, as insured, is rejected as unmarketable....
“(c) The Company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as insured, and the Company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy.
[[Image here]]
“5. Options to Pay or Otherwise Settle Claims
“The Company shall have the option to pay or otherwise settle for or in the name of an insured claimant any claim insured against or to terminate all liability and obligations of the Company hereunder by paying or tendering payment of the amount of insurance under this policy....
“6. Determination and Payment of Loss
“(a) The liability of the Company under this policy shall in no case exceed the least of:
“(i) the actual loss of the insured claimant; or
“(ii) the amount of insurance stated in schedule A.
[[Image here]]
“(c) When liability has been definitely fixed in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter.
“7. Limitation of Liability
“No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, as insured, within a reasonable time after receipt of such notice.... ”
Several points are established by the policy provisions: (1) MVT is liable only for loss or damage sustained or incurred by Odom; it does not provide coverage in regard to liens resulting in no loss or damage. Thus, Odom must prove actual loss or damage, and can recover only to the extent of that loss or damage. (2) MVT is entitled to notice of a claim or potential claim and, after such notice, “shall have the right ... without undue delay ... to [litigate or] do any other act *1016 which in its opinion may be necessary or desirable to establish the title to the estate or interest as insured.” (3) MVT has the specific right to “pay or otherwise settle ... any claim insured against.” (4) No claim arises if MVT “within a reasonable time” after receipt of notice removes the lien.
MVT introduced evidence that Odom first requested it to “insure over” the Heldor lien, that is, to insure the title to any purchaser Odom might secure, without excepting the Heldor lien. Odom’s attorney wrote MVT’s attorney on December 21, 1988, asking MVT to confirm that it would insure over the lien:
“As I understand, negotiations and/or litigation is ongoing to compel the holder of the judgment to cancel same and while it is hoped that that litigation is successful, Mr. Odom needs the assurance that Title Guaranty [sic — Magee’s company] will insure over the judgment so as to move forward with the marketing of the property. Accordingly, so as to mitigate and minimize Mr. Odom’s damages resulting from the continuation of this judgment as a matter of record, I need the certification from Title Guaranty at the earliest possible time.”
MVT introduced a letter from Magee to Odom’s attorney, dated December 29, 1988, and stating: “My company hereby agrees that upon a resale of the property covered by the above policy, no exception will be made in the commitment or the owner’s or mortgagee’s policies for the judgment held by Hel-dor.”
Meanwhile, MVT was attempting to settle the Heldor judgment. Magee obtained from Rockhold a copy of the November 1988 letter from Heldor showing that Rockhold had owed only $14,997 at the time Heldor took its $31,050 default judgment. MVT retained an attorney to negotiate with Heldor’s attorney about settling the judgment. MVT offered $14,997, but Heldor demanded $46,500, the judgment amount plus interest. Odom never presented a prospective purchaser to MVT; instead, in January 1989, he demanded that MVT pay the full amount claimed by Heldor. MVT did not do so but continued negotiating with Heldor. Odom brought this action on March 24,1989. MVT filed with its answer a bond in the amount of $50,000 to secure any payment due on the Heldor judgment and also filed a third-party complaint against Heldor, Norm Davis, and the Rockholds. That third-party complaint was settled, apparently by a payment to Heldor of $15,000 from MVT and $15,000 from Rockhold, and the Heldor lien was extinguished in February or March 1990.
At the trial of this action, the trial court stated that it was directing a verdict against MVT on the question of liability, but it also submitted the question of MVT’s liability and the amount of damages to the jury. Odom testified that, but for the Heldor hen, his mother-in-law would have bought the property for about $170,000 in the spring of 1989,[3] and this was the principal theory of his case against MVT. The court instructed the jury as follows:
“What you must determine with respect to [MVT] is whether or not the Plaintiff actually lost a sale of the property to his mother-in-law by virtue of the lien being on the property — the lien that was subsequently satisfied for fifteen thousand dollars.
“Damages. With respect to [MVT], the measure of damages would be the price which she was willing to pay and the price which the property was worth for which he was unable to get the sale. In other words, what he lost as a result of the sale or the failure of the sale.”
The jury returned a verdict for MVT, but the Court of Civil Appeals reversed the judgment on that verdict, holding that the verdict was inconsistent with the directed verdict against MVT, and remanded the cause for a new trial. The trial court then entered the summary judgment at issue here.
Odom argues that Stewart Title Guaranty Co. v. Goldome Credit Corp., 494 So.2d 10 (Ala.1986), is dispositive of this case and supports the summary judgment in his favor. *1017 We disagree, because we find two principal differences between Stewart and this case. First, in Stewart, the title company’s agent undertook to clear the existing lien before the sale took place, whereas here the attempt to clear’ the lien was undertaken by the seller and the buyer, and the title company simply knew of that effort.[4] Second, Stewart involved a mortgagee’s title policy, and the title defects rendered the mortgage worthless, whereas here the extent of damage is sharply in dispute.
Stewart presented the following situation. The Pruitts sold the Fikes one acre out of a 20-acre parcel covered by a mortgage. Stewart’s agent negotiated to have the one acre released from the mortgage but did not get it released. The Fikes defaulted, on their purchase-money mortgage, and their mortgagee, Goldome, sued Stewart. The trial court entered a summary judgment awarding Goldome the face amount of its policy with Stewart, and this Court affirmed. The trial court held that a reasonable time for Stewart to cure the defect began to run when its agent first attempted to do so, not when the Fikes defaulted, and this Court affirmed that holding. Here, Magee did not attempt to satisfy the lien; he was simply informed by Roekhold’s attorney, Davis, that Davis was using money paid by Odom to satisfy the judgment. Thus, no requirement for MVT to act was imposed until it received notice in December 1988 that Davis had not satisfied the lien. Its reasonable time to act began to run at that time, and a fact question is presented whether that time had expired when Odom filed this action in March 1989.
Stewart is also distinguishable on the question of damages. The indebtedness secured by Goldome’s mortgage exceeded the amount of the policy. The mortgage was ineffective to secure Goldome’s loan, not only because of the prior mortgage, but also because, the trial court found, the deed to the Fikes was a forgery. The trial court stated that “the mortgage is worthless,” 494 So.2d at 11, and this Court affirmed, holding that the trial court properly required Stewart to pay the policy limits toward the mortgage debt and then attempt to indemnify itself under its subrogation rights.[5] Odom did not have a specific loss, much less an undisputed loss equalling or exceeding the policy limits, so MVT had no obligation to pay him and then proceed against other parties. Moreover, there was a legitimate dispute as to the amount due Heldor; Heldor admitted in its November 1988 letter that the debt was less than half the judgment amount. Thus, a jury could find that MVT was within its contractual rights to refuse to pay the full amount demanded by Heldor. Stewart does not support a holding that MVT should have immediately paid Heldor the full amount of its demand or a holding that Odom is entitled to an undisputed amount of damages in any amount, much less the face amount of the policy.
For the foregoing reasons, Odom has not shown that there is no genuine question as to any material fact and that he is entitled to a judgment as a matter of law. See Rule 56(c), Ala.R.Civ.P. Fact questions are presented as to the reasonableness of MVT’s actions and, if it has breached the contract, as to the amount of Odom’s damages. The trial court erred in entering the summary judgment after the Court of Civil Appeals remanded for a new trial. The judgment is reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. Odom also notified Magee of a tax lien stemming from Magee’s failure to pay all of the taxes due when Odom purchased the property. Odom's complaint includes a count based on the tax lien, but Magee promptly tendered payment of the full amount of the tax lien. Therefore, the summary judgment cannot be sustained on this count, and this count will not be discussed further.

. We assume for the moment that the Heldor judgment continued as a lien against the property in December 1988 and thereafter only as a proximate consequence of a breach of contract by MVT; we will discuss the question of breach below.

. This evidence alone would support a damages award of $20,000, the difference between the alleged offer and the foreclosure sale price.

. Cf. Parker v. Ward, 614 So.2d 975 (Ala.1992), in which the Court discussed the question of a title company’s duty to search a title. No such question is presented here, because all parties were aware of the Heldor lien.

. Of course, the note secured by the mortgage was not necessarily uncollectible, but it was completely unsecured, and the purpose of the mortgagee's title policy is to ensure that the mortgage secures the note.