IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-30623
Summary Calendar

DEVIN RAMSEY and DONNA RAMSEY,

Plaintiffs-Appellants,

v.

PEPSI COLA BOTTLING CO.,
Also Known as DELTA BEVERAGE GROUP, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:05-CV-284

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Several cases of Pepsi-Cola fell from a cart being used by an employee of

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Delta Beverage Group, Inc. ("Delta Beverage"), to stock a store display. The cases struck and injured customer Devin Ramsey as he stood nearby. Ramsey and his wife, Donna Ramsey, sued Delta Beverage, and a jury awarded Devin $64,255 in damages and Donna $745 for loss of consortium.

The Ramseys appeal the decision not to grant a new trial, contending the award is insufficient and inconsistent with the jury's finding that the employee's negligence was the cause of Ramsey's injuries. The Ramseys also assert that they should receive a new trial because the court prejudiced their case by raising certain objections sua sponte. Because we grant significant deference to the findings of juries, including their allocation of damages, and because the statements by the court were not prejudicial, we affirm.

## I.

In March 2004, Ramsey suffered neck and lower back injuries in a motorcycle accident. An MRI taken in June 2004 indicated that he had partially herniated disks in his back at L4-L5 and L5-S1. The Pepsi Cola incident occurred less than six months later. Ramsey sought treatment from Dr. Boucree, and an MRI made in the course of that treatment revealed that Ramsey was still suffering from herniated disks at L4-L5 and L5-S1.

Boucree treated Ramsey with a combination of anti-inflammatory and pain medicines and a back corset. None of these treatments was very effective, so Ramsey agreed to have surgery to relieve the pain. In July 2005, while Boucree took a leave of absence from his practice, Dr. Arnold Feldman performed an endoscopic discectomy on Ramsey's L4-L5 disks. After the procedure, Ramsey told Feldman the pain had been significantly reduced.

In August 2005, Ramsey was involved in another motorcycle accident, after which he returned to Boucree for additional treatment for back pain. In October 2005, Boucree performed the open-back procedure he had planned to

perform in July 2005.

Boucree testified that the endoscopic discectomy performed by Feldman was actually a purcutaneous discectomy. Boucree also testified that he does not believe purcutaneous discectomies are very effective and that the peer-reviewed literature and clinical trials have not shown them to be effective. Boucree did, however, state that endoscopic discectomies can be as effective as the open procedure but that he prefers the open procedure.

Feldman testified that he performed an endoscopic discectomy but that some people consider a purcutaneous discectomy the same procedure as an endoscopic discectomy. There was evidence questioning whether Boucree had reviewed Feldman's operative report, suggesting that Boucree was misinformed about the actual type of procedure performed. Ultimately, both doctors offered conflicting and inconclusive testimony about the cause of Ramsey's injuries and the effectiveness of the various treatments received.

## II.

The Ramseys purport to raise four issues on appeal, but their sole claim is that the district court erred by denying a new trial.[1] The Ramseys offer three reasons that this is error: The jury award is inadequate and unsupported by the evidence; the jury's interrogatory answers are inconsistent; and the court prejudiced the case by raising objections sua sponte.

A motion for a new trial is properly denied unless the verdict is "against

---

[1] The Ramseys seem to assert that the court should have increased the award to cover all the medical expenses and to accord with other Louisiana cases involving back surgeries. The Ramseys also correctly recognize, however, that federal courts cannot order an additur, "because it would require the plaintiff to 'forego his constitutional right to the verdict of a jury and accept an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.'" Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 985 (5th Cir. 1989) (quoting Dimick v. Schiedt, 293 U.S. 474, 487 (1935)). Thus, "[i]f the trial judge finds the damages assessed inadequate as a matter of law, then the plaintiff deserves a new jury trial," id., the only possible remedy in federal court in such a situation.

the great [weight], not merely the preponderance, of the evidence." Jones, 870 F.2d at 986. We review the denial of a new trial for abuse of discretion. We must set aside a verdict where the evidence furnishes no sound basis and the trial court has refused to grant a new trial. Id. Because this is a diversity case, the sufficiency of the evidence required to support the verdict is governed by the federal standard, id., which is "that all the evidence must be viewed in a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points 'so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion].'" Id. at 987 (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).

The evidence does not overwhelmingly point in favor of a greater award, so we affirm. As the Ramseys correctly note, in Louisiana "[a] tortfeasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damage. The plaintiff has the burden of proving that his injuries were not the result of separate, independent and intervening causes."[2] We cannot say that the only conclusion reasonable people could arrive at is the explanation offered by the plaintiffs: that Ramsey had fully recovered from the first motorcycle accident, suffered back injuries in the Pepsi incident, and suffered no additional injuries in the second motorcycle accident. The evidence allows for an alternate account, one the jury apparently accepted, that the Pepsi incident aggravated an earlier injury that was adequately treated by the endoscopic discectomy and that the cause of much

---

[2] Thomas v. Hartford Ins. Co., 540 So. 2d 1068, 1075 (La. App. 1st Cir. 1989) (internal citations omitted), writ denied, 542 So. 2d 516 (La. 1989), overruled on other grounds, Cosse v. Allen-Bradley Co., 625 So. 2d 486, 489 (La. 1993).

of Ramsey's pain and medical expenses was the second motorcycle accident.[3] Thus, the jury awarded damages that it concluded properly represented the harm caused by the Delta Beverage employee's negligence and implicitly concluded the other harm was caused by "separate, independent and intervening causes." Thomas, 540 So. 2d at 1075. Because this is a reasonable conclusion, the award was not against the great weight of the evidence.

The Ramseys assert that, because the jury affirmatively answered the second interrogatory stating that the Delta Beverage employee's negligence was the "cause-in-fact and a legal cause of any injury that . . . Devin Ramsey suffered in the accident on September 14, 2004," it was inconsistent not to award Ramsey the amount of his full medical expenses. As reasoned above, however, the jury was free not to accept Ramsey's theory of the case, that the injuries requiring the treatment he received were all suffered in the Pepsi incident. It was reasonable for the jury to conclude, in accordance with the interrogatory, that the negligence of Delta Beverage's employee was the cause of the injury suffered on that date but that the treatment Ramsey received was for injuries he suffered before or after that date, in the first or second motorcycle accident. Given "'that a jury has great discretion in determining and awarding damages in an action for personal injuries,'"[4] the jury's affirmative answer to the second interrogatory is not irreconcilable with the award.

The Ramseys claim that the court's sua sponte objections to their questions warrant a new trial. Though we normally review for abuse of discretion the decision not to grant a new trial, here we review for plain error because the Ramseys

---

[3] If the jury drew these conclusions, it discounted Boucree's testimony that the surgery was necessary before the second accident, and the second accident did not aggravate Ramsey's back injuries. As the fact finder, the jury has the prerogative to discount the testimony of any witness and accept an alternate explanation.

[4] Chevalier v. Reliance Ins. Co., 953 F.2d 877, 881 (5th Cir. 1992) (quoting Book v. Nordrill, Inc., 826 F.2d 1457, 1462 (5th Cir. 1987)),

failed to object to the court's statements. Dixon v. Int'l Harvester Co., 754 F.2d 573, 585 (5th Cir. 1985). For us to reverse for plain error, the error must be clear or obvious and affect a substantial right; if both of these conditions are met, we will, at our discretion, correct the error if failing to do so would seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Wright v. Ford Motor Co., 508 F.3d 263, 272 (5th Cir. 2007).

The Ramseys offer eight instances in which they say the district court prejudiced them by raising objections sua sponte. In one instance, the court appropriately asked the Ramseys' attorney to identify the exhibit; five of the examples cited are not sua sponte objections at all but are proper responses to objections made by the defendant; and the final two occasions cited by the Ramseys show the court reminding their attorney not to ask leading questions, though there was no objection by the defendant. Assuming arguendo those two reminders are error, they certainly do not affect a substantial right. "In appraising the effect of these comments, we consider the record as a whole and not merely isolated remarks." Dixon, 754 F.2d at 585. Here, two statements by the court regarding leading questions in almost one thousand pages of transcript do not affect a substantial right such that the integrity of the trial was undermined.

AFFIRMED.